**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES PLATTE,

      Plaintiff,                         CASE NO. 08-CV-15146

*v.*                                DISTRICT JUDGE BERNARD A. FRIEDMAN
                                 MAGISTRATE JUDGE CHARLES E. BINDER

OTSEGO COUNTY
SHERIFF'S DEPARTMENT,
OTSEGO COUNTY,
ERIN HOUSE,
AMY KLEPADLO,
REGINA THERIAULT,
PATRICIA A. MORSE, and
KENT HILLEY,

      Defendants.

_____ /

**CORRECTED MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]**
**ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT BY DEFENDANTS**
**PATRICIA A. MORSE AND REGINA THERIAULT**
(Doc. 16)
**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS OTSEGO COUNTY**
**SHERIFF'S DEPARTMENT, OTSEGO COUNTY, AMY KLEPADLO**
**AND KENT HILLEY**
(Doc. 23)
**AND MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ERIN HOUSE[2]**
(Doc. 24)

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motions be

**GRANTED** and that the case be dismissed in its entirety.

_____

[1]The Report & Recommendation (R&R) is substantively the same as the R&R filed April 16, 2009; this corrected R&R is filed to correct the date on the certification only.

[2]Defendant House's motion is actually labeled for summary "disposition," but since the proper term in this Court is summary "judgment," the motion will be referred to as one for summary judgment.

2

II.   **REPORT**

   A.   **Background**

Plaintiff James Platte, a Michigan inmate, filed this civil rights action on December 15, 2008.  (Doc. 1.)  The case was referred to the undersigned magistrate judge for pretrial case management on December 29, 2008.  (Doc. 2.)  Plaintiff is currently incarcerated by the Michigan Department of Corrections ("MDOC") at the Kinross Correctional Facility in Kincheloe, Michigan.

The charges giving rise to the criminal process challenged by Plaintiff arose from an incident occurring on August 27, 2006, during which Plaintiff was alleged to have argued with and then hit his girlfriend in the face while driving his girlfriend's vehicle, eventually driving the vehicle into a tree.  (Doc. 23 at 4.)  According to the complaint, Defendant House, acting as prosecuting attorney, signed a felony complaint and authorized a warrant for Plaintiff's arrest on October 28, 2008, which was filed two days later.  (Doc. 1 ¶¶ 17-19; Doc. 23 at Ex. A.)

The charges contained in the felony complaint included assault with intent to murder, failure to stop at the scene of an accident resulting in serious impairment or death; aggravated domestic violence, second offense; and habitual offender fourth offense notice.  (*Id.*)  On November 4, 2008, Defendant Deputy Klepadlo signed the felony complaint and swore to the veracity of its contents before Defendant Magistrate Theriault who issued a felony warrant for Plaintiff's arrest.  (Doc. 1 ¶ 19; Doc. 23 at Ex. B.)  Plaintiff was serving a prison sentence for an unrelated offense at the time, and thus, was not transported to the 87th District Court until November 13, 2008, for arrest and arraignment.  He was then fingerprinted by Defendant Hilley and returned to the custody of the MDOC.  (Doc. 1 ¶¶ 21-27; Doc. 23 at 5; Doc. 23 at Ex. D.)  Preliminary hearings were held on these charges on November 20, 2008, and December 4, 2008.  (Doc. 23 at 5.)  Defendant Judge

3

Morse determined that probable cause existed to allow Plaintiff to be bound over to the state circuit court for trial.  (Doc. 23 at 5-6; Doc. 23 at Ex. E.)  Plaintiff filed a motion to disqualify Defendant Judge Morse, which was denied by Otsego Circuit Judge Janet Allen.  (Doc. 24 at 9.)  According to the Otsego County Case Register of Actions (case no. 09-003995), these charges are still pending and a jury trial is scheduled to commence on July 7, 2009.  Plaintiff indicates that the MDOC currently has a "hold" on him based on these pending charges.  (Doc. 1 ¶ 27.)

Plaintiff sets forth six counts in his complaint: (Count I) violation of the Fourth Amendment protection against unreasonable seizure; (Count II) violation of the Eighth Amendment protection from cruel and unusual punishment; (Count III) violation of the Fourteenth Amendment protection from deprivation of life, liberty or property without due process "where no felony Complaint has ever been filed or recorded initiating any criminal case in law"; (Count IV) violation of the Fourteenth Amendment's substantive due process component; (Count V) false imprisonment; (Count VI) conspiracy to violate "all his Constitutional rights listed in Claims [1,2,3,4,and 5] . . . where the act of conspiracy to kidnap and kidnapping has taken place and is **ongoing**."  (Doc. 1 at 5-7 (emphasis in original).)

Plaintiff seeks damages in the amount of one million five hundred thousand dollars ($1,500,000) against each individual defendant and three million dollars ($3,000,000) against each municipal defendant.  (*Id*. at 9.)

Three motions are before the Court.  On January 23, 2009, Defendants Regina Theriault and Patricia A. Morse filed a motion to dismiss.  (Doc. 16.)  Plaintiff responded in opposition to the motion (Doc. 22 and 29), and Defendants filed a reply.  (Doc. 25.)  On February 23, 2009, Defendants Otsego County Sheriff's Department, County of Otsego, Amy Klepaldo and Kent Hilley filed a motion for summary judgment, asserting, among other things, qualified immunity.

4

(Doc. 23.)  Plaintiff filed a response (Doc. 27) and Defendants filed a reply.  (Doc. 28.)  Finally, on February 27, 2009, Defendant Erin House filed a motion for summary judgment.  (Doc. 24.) Plaintiff filed a response.  (Doc. 26.)  Upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation without oral argument.

### B.     Abstention

At the threshold, I note that there is a pending state court criminal proceeding in which Plaintiff could raise the exact same issues he is raising here.  Therefore, I suggest that abstention should be considered.  "Under *Younger* abstention, absent unusual circumstances not presented here, a federal court must decline to interfere with pending state civil or criminal proceedings where important state interests are involved."  *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 41, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)).[3] *Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings.  *Younger*, 401 U.S. at 40-41.  Since Plaintiff has not sought declaratory or injunctive relief, but rather money damages only, *Younger* abstention does not apply.

The *Colorado River* abstention doctrine holds that although "generally . . . the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," several exceptional circumstances warrant abstention.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483

---

[3]Where, as here, a defendant does not raise abstention and instead argues for dismissal on the merits, the Sixth Circuit has held that a defendant's "failure to assert *Younger* abstention before arguing for dismissal of the claims on the merits did not constitute a waiver of the right to seek dismissal of the complaint on the grounds of *Younger* abstention."  *O'Neill*, 511 F.3d at 643.

(1976).  When a federal court determines that the following factors outweigh the duty to exercise jurisdiction where it exists, federal abstention is appropriate: (1) problems occurring from the exercise of state and federal jurisdiction over the same res; (2) the relative inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the state and federal proceedings commenced; and (5) whether federal or state law controls the litigation. *Id.  See also United States v. Commonwealth of Kentucky*, 252 F.3d 816, 827 (6th Cir. 2001).  All five factors should be considered and no one is determinative. *Id.*

Applying these factors to this case, I suggest that the first factor is not relevant.  As to the second factor, the federal forum is not particularly inconvenient, so I suggest it weighs in favor of retaining the case.  I further suggest that it is desirable to avoid piecemeal litigation and the state proceeding commenced first; thus, factors three and four weigh in favor of abstention.  However, the fifth factor weighs in favor of a decision in federal court since Plaintiff asserts several federal constitutional claims.  In addition, I note that none of the defendants' motions raise the abstention issue and thus imply a desire for the federal court to decide their motions.  Therefore, after balancing the factors, I suggest that the Court decline its discretion to abstain and consider the case on the merits.[4]

## C.    Motion Standards

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand*

---

[4]I note that if the Court determines abstention is appropriate, the Court should stay the proceedings rather than dismiss them without prejudice.  *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995).

*C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65 (citations omitted).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).  Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

7

strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

> **D.      Motions by Defendants Theriault, Morse (Doc. 16) and House (Doc. 24)[5]**

> **1.      Judicial Immunity - Defendants Theriault and Morse**

Defendant Morse is an 87th District Court Judge in Michigan and Defendant Theriault is a Magistrate in that same court. "State court magistrates are clearly judicial officers entitled to the protections of judicial immunity." *Nicklay v. 56-A Dist. Court*, No. 1:08-cv-331, 2008 WL 4376400, at *4 (W.D. Mich. Sept. 22, 2008) (citing *Krajicek v. Justin*, 991 F. Supp. 875, 876 (E.D. Mich. 1998), *aff'd*, 178 F.3d 1294 (6th Cir. 1999)).  Under the doctrine of judicial immunity, judges are immune from suits seeking money damages based on their judicial acts. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Kipen v. Lawson*, 57 Fed. App'x 691 (6th Cir. 2003); *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1977).  The doctrine is justified "by a long settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  This principle of independent decision-making is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

Judicial immunity is abrogated only when a judge is not acting in a judicial capacity, or when the judge takes action in the absence of jurisdiction. *Mireles*, 502 U.S. at 11-12.  Whether an action is judicial depends on the "'nature' and 'function' of the act, not the 'act itself.'" *Id.* at

---

[5]Although labeled a motion for summary disposition, which is akin to summary judgment in federal courts, Defendant House's motion cites Rule 12(b)(6) and applies dismissal standards and will thus be treated as such. (Doc. 24.)

13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)). Courts should "look to the particular act's relation to a general function normally performed by a judge" and whether the parties dealt with the judge in his or her judicial capacity. *Mireles*, 502 U.S. at 13; *Stump*, 435 U.S. at 362. An act "'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" *Sparks v. Character and Fitness Committee of Kentucky*, 859 F.2d 428, 432 (6th Cir. 1988) (quoting *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)).

Defendant Magistrate Theriault issued a felony warrant for Plaintiff's arrest and Defendant Judge Morse determined that probable cause existed to allow Plaintiff to be bound over to the state circuit court for trial, both of which are beyond doubt judicial functions exercised by judicial officers possessing the authority to do so. I therefore suggest that Defendant Theriault's and Defendant Morse's motions to dismiss be granted and that the case against each of them be dismissed.

### 2.    Prosecutorial Immunity - Defendant House

Defendant House was a duly appointed Special Assistant Attorney General who was appointed to prosecute the Otsego County case because of the conflict created by Plaintiff's father's alleged actions in stalking the Otsego County Prosecutor, Kyle T. Legal. (Doc. 24 at 8.)

"[A] prosecuting attorney will only receive absolute immunity for activities that were 'an integral part of the judicial process.'" *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (concluding that prosecutor was not entitled to absolute immunity for coercing and threatening a witness to continue to testify falsely post-trial and during administrative investigation). Since the United States Supreme Court has previously concluded that "the knowing use of false testimony and the suppression of material evidence at [a defendant's] criminal trial were 'intimately

9

associated' with the judicial phase of the criminal process thereby triggering absolute immunity, the Court did not address what other activities might also be 'integral.'"  *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 413, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)).  Since *Imbler*, courts have taken a "functional approach" and "have concluded that a prosecutor is protected 'in connection with his duties in functioning as a prosecutor.'"  *Id.* (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).  The "critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process."  *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis in original).  The types of activities that have been considered as within the  advocacy role of the prosecutor's office such that absolute immunity applies are claims for malicious prosecution, appearance at a probable cause hearing and before a grand jury, evaluation of evidence, preparation of witnesses for trial, and the knowing presentation of false testimony.  *Spurlock*, 330 F.3d at 797-98 (citations provided therein).

In the instant case, the allegations are that Defendant House, acting as prosecuting attorney, signed a felony complaint and authorized a warrant for Plaintiff's arrest on October 28, 2008, which was filed two days later.  (Doc. 1 ¶ 17-19.)  I suggest that the decision to file charges and to authorize an arrest are "intimately associated" with the judicial phase and are functions of her "role as an advocate."  *Imbler, supra; Holloway, supra.*  Consequently, I suggest that Defendant House's motion to dismiss be granted and that the case against her be dismissed.

### E.  Motion by Defendants Otsego County Sheriff's Department, County of Otsego, Klepadlo & Hilley (Doc. 23)

### 1.  Defendant Otsego County Sheriff's Department

As to the Otsego County Sheriff's Department,

10

> Michigan is a jurisdiction in which the sheriff and prosecutor are constitutional officers, and there does not exist a sheriff's department or prosecutor's office. Instead, the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates.  Mich. Const. Art. 7, § 4.  Since the sheriff's department and the prosecutor's office do not exist, they obviously cannot be sued.

*Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1995) (quoted with approval in *Mitchell v. Washtenaw County Sheriff's Dept.*, No. 06-13160, 2009 WL 909584, at \*3 (E.D. Mich. Feb. 18, 2009).  Accordingly, I suggest that the motion for summary judgment be granted as to the Otsego County Sheriff's Department.

### 2.    Defendant Otsego County

As to Otsego County, a county government is not responsible for "every misdeed of [its] employees and agents."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993).  A municipality is only liable when the custom or policy is the "moving force" behind the alleged deprivation of constitutional rights.  *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  In order to prove municipal liability, the Sixth Circuit requires a plaintiff to:  (1) identify the municipal policy or custom; (2) connect the policy or custom to the municipality; and (3) show that his particular injury was caused by execution of that policy or custom.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).  *See also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Clairborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

I suggest that Plaintiff's Complaint fails to identify any actual policy or custom and fails to connect an actual policy to the County.  Therefore, I suggest that the County of Otsego's motion for summary judgment be granted and the case against it dismissed.

### 3.    Defendants Klepadlo and Hilley

11

Defendants Klepadlo and Hilley, deputies in the Otsego County Sheriff's Department, argue that they are entitled to qualified immunity. (Doc. 23 at 10-12.)

The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has clarified the interplay between qualified immunity and summary judgment:

12

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.  As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'  '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris,* 550 U.S.372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

According to this Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one.  The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)).  The court must only consider the facts known to the officers at the time the conduct was undertaken.  *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### a.    Whether a Constitutional Violation Occurred

Since "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' . . . [our] analysis begins by identifying the

specific constitutional right allegedly infringed . . . ."  *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865,  104 L. Ed. 2d 443 (1989).

Plaintiff sets forth four counts in his complaint which alleged constitutional violations: (Count I) violation of the Fourth Amendment protection against unreasonable seizure; (Count II) violation of the Eighth Amendment protection from cruel and unusual punishment; (Count III) violation of the Fourteenth Amendment protection from deprivation of life, liberty or property without due process "where no felony Complaint has ever been filed or recorded initiating any criminal case in law"; and (Count IV) violation of the Fourteenth Amendment's substantive due process component.

### i.      Eighth and Fourteenth Amendment Claims - Counts II, III, and IV

Plaintiff avers that Defendants Klepadlo and Hilley violated his 8th Amendment right to be free from cruel and unusual punishment and the Fourteenth Amendment's procedural and substantive due process rights.  (Dkt. 1 at 6.)

As to the Eighth Amendment, "[b]ecause the Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citations omitted).  As to the Fourteenth Amendment, "state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause."  *Id.* (citations omitted).

In the instant case, Plaintiff has not been a "detainee" for the offenses charged in Otsego County that form the basis of this complaint.  According to Plaintiff's complaint, he was transported to Otsego County for arraignment and other hearings but was always returned to the

14

custody of the MDOC after each court appearance.  (Doc. 1 ¶¶ 21-27; Doc. 23 at 5-6.)  Plaintiff

indicates that the MDOC currently has a "hold" on him based on these pending charges, but he has

not yet been incarcerated based on the Otsego County charges at issue in the instant case.  (Doc.

1 ¶ 27.)  Therefore, although Plaintiff was and is "pretrial," he cannot be considered a detainee for

the purposes of the charges for which he faces trial, and thus has not stated a claim for which relief

may be granted under the Eighth or Fourteenth Amendments.  *See Thompson v. County of Medina*,

29 F.3d 238, 242 (6th Cir. 1994) ("pretrial detainees held in jail are protected under the Fourteenth

Amendment").  Therefore, I suggest that no Eighth or Fourteenth Amendment claim has been

stated and that the motion for summary judgment based on these alleged constitutional violations

should be dismissed.

I further note that even if he were considered a pretrial detainee under the Otsego County

pending charges, he has not alleged any cruel or unusual conduct beyond simply being charged,

arrested, and arraigned, which fails to state a claim.

### ii.    Fourth Amendment Claim - Count I

Defendant Klepadlo contends that she had probable cause to arrest Plaintiff after conducting

a thorough investigation, interviewing multiple eyewitnesses and the victim, and that she had a

duty to arrest Plaintiff pursuant to the felony warrant issued by Magistrate Theriault.  (Doc. 23 at

14; Doc. 28 at 4.)  Defendant Hilley notes that his actions were limited to fingerprinting Plaintiff

and taking a booking photograph of Plaintiff.  (Doc. 28 at 2.)

The Fourth Amendment of the U.S. Constitution requires that an arrest be supported by

probable cause.  U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

"[P]robable cause means something 'less than evidence that would justify . . . conviction,' but

'more than bare suspicion.'"  *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting

*Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). When a court is called upon to make a determination as to whether an arrest was supported by probable cause, the arresting officer's subjective knowledge of the facts are the only facts to be considered, even if it is now known that some of the officer's beliefs were in fact mistaken. *Klein*, 275 F.3d at 549-50. The Supreme Court has held that an officer is permitted to make a warrantless arrest, even for a misdemeanor, so long as he has probable cause to believe that an offense has been committed. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).

Plaintiff contends that the Fourth Amendment was violated because the "record produced in the Register of Actions attached herewith, clearly shows no [record of] 'probable cause'" and that the information contained in a warrant must be truthful and not omit material facts, and therefore, Defendants "Kleadlo and Hilley should have known that Plaintiff Platte's arrest was illegal." (Doc. 27 at 4-5.) Plaintiff does not state what information was untruthful or what material facts were omitted.

"State officers . . . are entitled to rely on a judicially secured warrant unless the warrant was so lacking in indicia of probable cause that existence of probable cause was unreasonable." *BPNC, Inc. v. Taft*, 147 Fed. Appx. 525, 530 (6th Cir. 2005) (finding no constitutional violation where Plaintiff failed to identify any statements in the affidavit that were false and failed to identify which officers stated a deliberate falsehood or showed a reckless disregard for the truth). Since Plaintiff has failed to identify any factual falsity or material omission and has not alleged facial

16

invalidity of the warrant, I suggest that Plaintiff has not met his burden to come forward with evidence to create a genuine issue of material fact regarding whether his Fourth Amendment rights were violated. I thus further suggest that Defendants Klepadlo's and Hilley's[6] motions for summary judgment be granted as to this Fourth Amendment claim.

### b.   Whether the Rights Were Clearly Established

Sine I suggest that no constitutional right was violated, there is no need to determine whether any rights were clearly established.

### F.   Pendent State Law Claims

Plaintiff's complaint also asserts the state law claims of false imprisonment and conspiracy to kidnap. (Doc. 1 at 7.) I suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain the pendent state law claims. *Id.* at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") *See also Hankins v. The Gap, Inc.*, 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

---

[6]Alternatively, I suggest that Plaintiff has failed to identify any conduct on the part of Defendant Hilley that could give rise to a Fourth Amendment claim. Merely taking fingerprints and photographs does not implicate the Fourth Amendment. *See United States v. Pipito*, 861 F.2d 1006, 1009 (7th Cir. 1987) (forced taking of palm print not a deprivation of Fourth Amendment rights); *In Re Grand Jury Proceedings (Mills)*, 686 F.2d 135, 139 (3d Cir. 1982) (hair sample, like voice and fingerprints, are on public display and thus fall outside Fourth Amendment protections) (cited with approval in *United States v. Meza-Rodrigues*, No. 1:06-CR-171, 2006 WL 2431398, at *1 (W.D. Mich. Aug. 21, 2006)).

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation

within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure

to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be

served upon this Magistrate Judge.


                                                   s/  Charles E Binder

                                                   CHARLES E. BINDER
Dated: April 27, 2009                              United States Magistrate Judge




                                        **CERTIFICATION**

        I hereby certify that this Report and Recommendation was electronically filed this date, served
upon counsel of record via the Court's ECF System and was mailed by the U.S. Postal Service to the
following non-ECF participants: James Platte, #285651, Kinross Correctional Facility, 16770 South
Watertower Drive, Kincheloe, MI 49788-1637.


Dated:  April 27, 2009                    By____s/Patricia T. Morris_____
                                          Law Clerk to Magistrate Judge Binder


                                                18